

**U.S. Department of Justice**

*William J. Leone*

*Acting United States Attorney*
*District of Colorado*

---

*1225 Seventeenth Street, Suite 700*         (303) 454-0100
*Seventeenth Street Plaza*                   (FAX) (303) 454-0400
*Denver, Colorado 80202*

June 1, 2005                                 ***Via Facsimile and Hand Delivery***

Ann England, Esq.
Assistant Federal Public Defender
633 Seventeenth Street, Suite 1000
Denver, Colorado 80202

        Re: <u>United States v. Nickelli Lynette Kelly, 04-CR-517-B</u>

Dear Ms. England:

This letter sets forth the full and complete plea offer to your client, Nickelli Lynette Kelly. This offer is binding only upon the Criminal Divisions of the United States Attorney's Offices for the District of Colorado and the District of Columbia (hereafter "the government" or "the USAOs"). This plea offer will expire on June 10, 2005. Upon receipt, the executed letter will itself become the plea agreement. The terms of the offer are as follows:

    1.    **Charges**: Ms. Kelly agrees to plead guilty to Counts 5 and 10 of the Indictment, charging violations of 18 U.S.C. §§ 1343 (Wire Fraud) and 2 (Causing Acts To Be Done). It is understood that the guilty pleas will be based on a factual admission of guilt to the offenses charged, to be made before the Court by Ms. Kelly, and will be entered in accordance with Federal Rule of Criminal Procedure 11. Ms. Kelly agrees that the attached "Statement of the Offense" fairly and accurately describes Ms. Kelly's actions and involvement in the offense. It is anticipated that contemporaneous with the execution of this plea letter, Ms. Kelly will adopt and sign the "Statement of Offense" as a written proffer of evidence.

    2.    **Potential penalties, assessments, and restitution**: Ms. Kelly understands that the maximum sentence that can be imposed for each count of conviction is 5 years of imprisonment,[1] a fine of $250,000, or a fine of twice the pecuniary gain or loss pursuant to 18 U.S.C. § 3571(d), a $100 special assessment, a three-year term of supervised release, an order of

---

[1] By statute enacted July 30, 2002, the statutory maximum penalty for violations of 18 U.S.C. § 1343 (wire fraud) were increased to 20 years incarceration or $2,000,000 fine, or both. However, due to the dates of Ms. Kelly's offense conduct and *ex post facto* considerations, the parties believe that the relevant statutory maximum penalties described above (*i.e.*, 5 years incarceration, etc.) will apply to this case.

restitution, and an obligation to pay any applicable interest or penalties on fines or restitution not timely made. Notwithstanding the maximum sentence, Ms. Kelly understands that the sentence to be imposed in this case will be determined by the court, guided by the factors enumerated in 18 U.S.C. § 3553(a), including a consideration of the guidelines and policies promulgated by the United States Sentencing Guidelines Commission, Guidelines Manual (2004) (hereinafter "Sentencing Guidelines" or "U.S.S.G."). Ms. Kelly understands that this sentence, including the applicable sentencing guideline range, will be determined solely by the Court, and the government cannot and does not make any promises, representations, or predictions regarding what sentence the Court will impose. Ms. Kelly further understands that if the Court imposes a sentence greater than that provided in the Sentencing Guidelines range as determined by the Court, or which is in any other way unsatisfactory to her, she cannot move to withdraw her guilty plea.

3. **Federal Sentencing Guidelines**: The parties agree that the following Sentencing Guideline Sections apply:

§ 2B1.1

(a) Base Offense Level                                6
(b) Specific Offense Characteristics           10

Loss between $120,000 and $200,000;
No other victim, or role related adjustments

Total Offense Level =                              16

§ 3E1.1(b)

Acceptance of responsibility                    - 3
Total Adjusted Offense Level =              13

Your client and this Office agree that a sentence within the sentencing range determined pursuant to the United States Sentencing Guidelines as set forth in this paragraph would be a reasonable sentence for defendant Kelly in this case. In the event that this plea offer is either not accepted by Ms. Kelly or is accepted by Ms. Kelly but the guilty plea is either rejected by the Court or subsequently is withdrawn, the parties will not be bound by the proposed interpretations of applicable Sentencing Guidelines provisions contained herein.

4. **Financial Arrangements**: Ms. Kelly agrees that prior to or at the time of the sentencing, she will deliver to the Clerk's Office, United States District Court for the District of Columbia, a certified check in the amount of $200.00, to cover the special assessment, as required in 18 U.S.C. § 3013. Ms. Kelly also agrees to pay restitution in the amount of $126,175.00, as to which amount Ms. Kelly may be jointly and severally liable with Mr. Bernard Miller. Ms. Kelly also agrees to provide a full and complete accounting of all assets, real or

tangible, held by her or in any other name for her benefit, and, to that end, to submit a standard form 500 (Financial Statement of Debtor).

5. **Waiver of Rights**: Federal Rule of Criminal Procedure 11(f) and Federal Rule of Evidence 410 limit the admissibility of statements made in the course of plea proceedings or plea discussions in both civil and criminal proceedings, if the guilty plea is later withdrawn. Ms. Kelly expressly warrants that she has discussed these rules with her counsel and understands them. Ms. Kelly voluntarily waives and gives up the rights enumerated in Federal Rule of Criminal Procedure 11(f) and Federal Rule of Evidence 410. Ms. Kelly understands and agrees that any statements she makes in the course of her guilty pleas or in connection with this plea agreement are admissible against her for any purpose in any criminal or civil proceeding, if the guilty pleas are subsequently withdrawn.

6. **Government Concessions**: In exchange for her guilty plea, the government agrees not to oppose a three-level adjustment for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(b), provided that Ms. Kelly continues to show her acceptance of responsibility, as set forth in U.S.S.G. § 3E1.1, by: (a) cooperating with the presentence report writer (including answering all material questions truthfully and providing all financial information requested); (b) cooperating fully and truthfully with the Court in any proceeding arising from this matter; (c) complying with the other provisions of this agreement; and (d) abiding by the conditions set for her release by the Court. Also, subject to other paragraphs in this agreement, the government will not bring any additional criminal charges against Ms. Kelly in the United States District Court for the District of Columbia or the Superior Court of the District of Columbia for the offenses outlined in the attached Statement of Offense. This agreement not to prosecute Ms. Kelly does not extend to federal or local crimes of violence as those terms are defined in 18 U.S.C. § 16 and D.C. Code § 23-1331(4). It is understood that the United States has no evidence, as of the date of this agreement, of any crimes of violence involving Ms. Kelly.

7. **Rule 20 Transfer**: The parties anticipate that Ms. Kelly will request, and the government will seek to facilitate, the transfer of this case from the District of Colorado to the District of Columbia for the purposes of plea disposition and sentencing, pursuant to Federal Rule of Criminal Procedure 20.

8. **Bond Conditions**: Ms. Kelly understands that the Court is not obligated to follow any recommendation of the government regarding bond status and that the final decision regarding her bond status or detention will be made by the Court. The Court's decision in these regards is not grounds for withdrawal from this agreement.

9. **Reservation of Allocution**: The government reserves its full right of allocution, including, among other things, the right: (a) to inform the presentence report writer of any relevant facts; (b) to dispute factual inaccuracies in the presentence report and to contest any matters not provided for in this plea agreement; and (c) to set forth at sentencing and at any proceedings before the Bureau of Prisons all of its evidence with respect to all of Ms. Kelly's criminal activities, subject to the provisions of the following paragraph.

If in this plea agreement the government has agreed to recommend or refrain from recommending to the sentencing judge a particular resolution of any sentencing issue, the government reserves the right to full allocution in any post-sentence litigation in order to defend the sentencing judge's ultimate decision on such issues.

10. **Waiver of Appeal**: Ms. Kelly is aware that federal law, specifically 18 U.S.C. § 3742, affords her the right to appeal her sentence. Ms. Kelly is aware that the parties' calculation of the sentencing range under the Sentencing Guidelines is not a promise of the sentence to be imposed on her and is not binding on the Court. Knowing that, Ms. Kelly waives the right to appeal her sentence or the manner in which it was determined pursuant to 18 U.S.C. § 3742, except to the extent that (a) the Court sentences Ms. Kelly to a period of imprisonment longer than the statutory maximum or (b) the Court departs upward from the applicable Sentencing Guideline range pursuant to the provisions of U.S.S.G. § 5K2, or otherwise imposes a sentence higher than the applicable Sentencing Guideline range as determined by the Court. Further, Ms. Kelly reserves her right to make a collateral attack upon her sentence pursuant to 28 U.S.C. § 2255 if new and currently unavailable information becomes known to her. In agreeing to this waiver, Ms. Kelly is aware that her sentence has not yet been determined by the Court. Realizing the uncertainty in estimating what sentence the Court will ultimately impose, Ms. Kelly knowingly and willingly waives her right to appeal the sentence, to the extent noted above, in exchange for the concessions made by the government in this agreement. See In re Sealed Case, 283 F.3d 349, 355 (D.C. Cir.), cert. denied, 537 U.S. 891 (2002).

11. **Breach of Agreement**: Ms. Kelly agrees that if she fails to comply with any of the provisions of this plea agreement, makes false or misleading statements before the Court, commits any further crimes, and/or attempts to withdraw the plea, the government will have the right to characterize such conduct as a breach of this plea agreement. Moreover, if during an investigation or prosecution Ms. Kelly should commit perjury, knowingly give any false statement, commit any act of contempt, or obstruct justice, the government may prosecute her for these offenses to the fullest extent provided by law. In the event of a breach of this agreement, (a) the government will be free from its obligations under the agreement and may take whatever position it believes appropriate as to the sentence and the conditions of Ms. Kelly's release (for example, should Ms. Kelly commit any conduct after the date of this agreement that would form the basis for an increase in Ms. Kelly's offense level or justify an upward departure -- examples of which include but are not limited to, obstruction of justice, failure to appear for a court proceeding, criminal conduct while pending sentencing, and false statements to law enforcement agents, a probation officer, or Court -- the government is free under this agreement to seek an increase in the offense level based on that post-agreement conduct); (b) Ms. Kelly will not have the right to move to withdraw the guilty plea; (c) Ms. Kelly shall be fully subject to criminal prosecution for any other crimes which she has committed or might commit, if any, including but not limited to perjury and obstruction of justice; and (d) the government will be free to use against Ms. Kelly, directly and indirectly, in any criminal or civil proceeding any of the information or materials provided by her pursuant to this agreement.

In the event of a dispute as to whether Ms. Kelly has breached this agreement, and if Ms. Kelly so requests, the matter shall be submitted to the Court and shall be resolved by the Court in

an appropriate proceeding at which any information provided to the government prior to, during, or after the execution of the plea agreement shall be admissible and at which the government shall have the burden to establish a breach by a preponderance of the evidence.

12. **USAOs Criminal Divisions Bound:** Ms. Kelly understands that this agreement is binding only upon the Criminal Division of the United States Attorney's Office for the Districts of Colorado and Columbia. This agreement does not bind the Civil Division of these Offices or any other United States Attorney's Office, nor does it bind any other state, local, or federal prosecutor. It also does not bar or compromise any civil, tax, or administrative claim pending or that may be made against Ms. Kelly.

13. **Complete Agreement:** No other agreements, promises, understandings, or representations have been made by the parties or their counsel than those contained in writing herein, nor will any such agreements, promises, understandings, or representations be made unless committed to writing and signed by Ms. Kelly, Ms. Kelly's counsel, and an Assistant United States Attorney for the District of Columbia and the District of Colorado.

If the foregoing terms and conditions are satisfactory, Ms. Kelly may indicate her assent by signing the agreement in the space indicated below and returning the original to me once it has been signed by Ms. Kelly and her counsel.

Sincerely yours,

KENNETH L. WAINSTEIN
UNITED STATES ATTORNEY

By: ANTHONY M. ALEXIS
Assistant United States Attorney

WILLIAM J. LEONE
ACTING UNITED STATES ATTORNEY
DISTRICT OF COLORADO

By: PATRICIA W. DAVIES
ASSISTANT U. S. ATTORNEY

I have read this plea agreement, consisting of ___6___ pages, and have discussed it with my attorney, Ann England, Esquire. I fully understand this agreement and agree to it without reservation. I do this voluntarily and of my own free will, intending to be legally bound. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this agreement fully. I am pleading guilty because I am in fact guilty of the offense(s) identified in paragraph one.

I reaffirm that absolutely no promises, agreements, understandings, or conditions have been made or entered into in connection with my decision to plead guilty except those set forth in this plea agreement. I am satisfied with the legal services provided by my attorney in connection with this plea agreement and matters related to it.

Date: __8/17/05__    _____
NICKELLI LYNETTE KELLY
DEFENDANT

I have read each of the ___6___ pages constituting this plea agreement, reviewed them with my client, and discussed the provisions of the agreement with my client, fully. These pages accurately and completely set forth the entire plea agreement. I concur in my client's desire to plead guilty as set forth in this agreement.

Date: __8/17/05__    _____
JANINE YUNKER, ESQUIRE
ATTORNEY FOR THE DEFENDANT

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL CASE NO. |
| | : | |
| v. | : | VIOLATIONS: |
| | : | 18 U.S.C. § 1343 |
| | : | (Wire Fraud); |
| | : | 18 U.S.C. § 2 |
| NICKELLI LYNETTE KELLY, | : | (Causing Acts To Be Done) |
| | : | |
| Defendant. | : | |
| | : | |

## STATEMENT OF OFFENSE

1. At all times relevant to this Statement of Offense, defendant NICKELLI LYNETTE KELLY (hereinafter "Defendant") was a resident of Maryland and the District of Columbia.

2. The National Renewable Energy Laboratory ("NREL") was an agency within the United States Department of Energy ("DOE"), and had its main administrative center in Golden, Colorado. NREL's Golden center was responsible for receiving and processing payments and reimbursements for expenditures made on NREL's behalf. NREL also had an office at 901 D Street, Suite 930, Washington, D.C.

3. The defendant, NICKELLI LYNETTE KELLY was an administrative assistant for NREL at its Washington, D.C. office. Defendant Kelly's responsibilities included making purchases required for NREL projects using her government purchase card, and then seeking reimbursement for authorized NREL purchases by submitting "bankcard ordering logs" and supporting documentation to NREL's administrative center in Golden, Colorado. The defendant, NICKELLI LYNETTE KELLY and Bernard Miller met in connection with defendant's obtaining copying services for NREL from Mr. Miller's copying business.

4. Bernard Miller was the President and owner of Miller Copying Service, which was located at 1111 7th Street NW, Washington, D.C. On February 28, 2005, Mr. Miller entered his guilty plea for his role in this fraud, before the United States District Court for the District of Columbia, in *United States v. Bernard Miller*, CR-05-044-01.

5. Beginning in or about April 2000 and continuing to in or about April 2002, in the District of Columbia and elsewhere, the defendant NICKELLI LYNETTE KELLY knowingly devised a scheme to defraud and to obtain money from the United States government by means of materially false and fraudulent pretenses, representations and promises, as follows:

    a. As part of the scheme to defraud, defendant KELLY and Bernard Miller agreed to overcharge and defraud NREL and to share the proceeds of their fraud.

    b. As part of the scheme to defraud, defendant KELLY would initiate a request to Bernard Miller for a fraudulent NREL copying job by either telephoning or sending a request via facsimile transmission to Miller Copying Service.

    c. As part of the scheme to defraud, Bernard Miller would then prepare a "Miller Copying Service" invoice for the fraudulent NREL copying job in the amount defendant KELLY directed.

    d. As part of the scheme to defraud, defendant KELLY would supply Bernard Miller with a government purchase card number, which was either the card number assigned to defendant KELLY or a card number assigned to another NREL employee, to which Bernard Miller was to charge the fraudulent NREL copying job.

    e. As part of the scheme to defraud, Bernard Miller would then charge the cost of the fraudulent copy job to the government purchase card number that defendant KELLY

provided to him, which would then cause payment from the United States government to Bernard Miller's bank account.

 f. As part of the scheme to defraud, Bernard Miller would receive the monies from the fraudulent NREL copy jobs into his account at Riggs Bank, and would then withdraw cash from his bank account, meet defendant KELLY, and pay defendant KELLY her share.

 g. As part of the scheme to defraud, defendant KELLY would complete the necessary paperwork to facilitate reimbursement for the fraudulent copying jobs on the government purchase card by: (i) falsely completing a "Bankcard Ordering Log," indicating that the copying jobs performed by Bernard Miller were required for certain NREL projects; (ii) submitting a copy of the monthly statement for the relevant government purchase card; (iii) submitting copies of the Miller Copying Service invoices for the fraudulent NREL copying transactions as supporting documentation; and (iv) sending these documents via facsimile transmission to NREL's administrative center in Golden, Colorado.

 h. As part of the scheme to defraud, defendant KELLY submitted documentation to NREL for reimbursements relating to fraudulent copying jobs in a total amount of approximately $126,175.

6. Evidence obtained during the investigation -- including: (a) NREL employees' statements that certain NREL copying jobs by Miller Copying Service were fraudulent non-existent jobs; (b) Miller Copying Service invoices relating to such fraudulent NREL copying jobs; (c) government purchase card ordering logs and monthly statements reflecting the fraudulent NREL copying jobs; and (d) records showing that the United States government paid for such fraudulent NREL copying jobs — provide specific details regarding the dates of the

3

fraudulent copying jobs; amounts for the jobs (totaling approximately $126,175); copying job descriptions; and whose government purchase card was used to pay for the fraudulent NREL copying job.

7. [Count 5] In particular, to execute the scheme to defraud or to obtain money from the United States government, as described in ¶¶ 5(a)-(h), above, on September 18, 2001, defendant KELLY sent a reimbursement submission, including a Bankcard Ordering Log (for a card issued to a co-worker) and Miller Copying Service invoices totaling $3,998 via facsimile transmission from NREL in Washington, D.C. to NREL's administrative center in Golden, Colorado.

8. [Count 10] In particular, to execute the scheme to defraud or to obtain money, as described in ¶¶ 5(a)-(h), above, on March 31, 2002, defendant KELLY sent a reimbursement submission, including a Bankcard Ordering Log (for a card issued to a co-worker) and a Miller Copying Service Invoice for $2,436 via facsimile transmission from NREL in Washington, D.C. to NREL's administrative center in Golden, Colorado.

//
//
//
//
//
//
//
//

9. For the purposes of computing her sentence under the Federal Sentencing Guidelines, defendant KELLY agrees that the total amount of shared proceeds from the scheme was between $120,000 and $200,000.

Dated: _____

For the Defendant: _____
NICKELLI LYNETTE KELLY

Dated: 8/17/05

_____
JANINE YUNKER, ESQUIRE
ATTORNEY FOR NICKELLI LYNETTE KELLY

5

The elements of wire fraud under 18 U.S.C. § 1343

 (1) that the defendant voluntarily and intentionally devised or participated in a scheme to defraud another out of money;
 (2) that the defendant did so with the intent to defraud;
 (3) that it was reasonably foreseeable that interstate wire communications would be used; and
 (4) that interstate wire communications were in fact used)

<u>United States v. Maxwell</u>, 920 F.2d 1028, 1035 (D.C. Cir. 1990) ("Wire fraud requires proof of (1) a scheme to defraud; and (2) the use of an interstate wire communication to further the scheme.")