UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL CASE NO. *05-317* |
| | : | |
| v. | : | VIOLATIONS: |
| | : | 18 U.S.C. § 1343 |
| | : | (Wire Fraud); |
| | : | 18 U.S.C. § 2 |
| NICKELLI LYNETTE KELLY, | : | (Causing Acts To Be Done) |
| | : | |
| Defendant. | : | |
| | : | |

**FILED**

FEB 0 9 2006

**STATEMENT OF OFFENSE**

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

1. At all times relevant to this Statement of Offense, defendant NICKELLI LYNETTE KELLY (hereinafter "Defendant") was a resident of Maryland and the District of Columbia.

2. The National Renewable Energy Laboratory ("NREL") was an agency within the United States Department of Energy ("DOE"), and had its main administrative center in Golden, Colorado. NREL's Golden center was responsible for receiving and processing payments and reimbursements for expenditures made on NREL's behalf. NREL also had an office at 901 D Street, Suite 930, Washington, D.C.

3. The defendant, NICKELLI LYNETTE KELLY was an administrative assistant for NREL at its Washington, D.C. office. Defendant Kelly's responsibilities included making purchases required for NREL projects using her government purchase card, and then seeking reimbursement for authorized NREL purchases by submitting "bankcard ordering logs" and supporting documentation to NREL's administrative center in Golden, Colorado. The defendant, NICKELLI LYNETTE KELLY and Bernard Miller met in connection with defendant's obtaining copying services for NREL from Mr. Miller's copying business.

4. Bernard Miller was the President and owner of Miller Copying Service, which was located at 1111 7th Street NW, Washington, D.C. On February 28, 2005, Mr. Miller entered his guilty plea for his role in this fraud, before the United States District Court for the District of Columbia, in *United States v. Bernard Miller*, CR-05-044-01.

5. Beginning in or about April 2000 and continuing to in or about April 2002, in the District of Columbia and elsewhere, the defendant NICKELLI LYNETTE KELLY knowingly devised a scheme to defraud and to obtain money from the United States government by means of materially false and fraudulent pretenses, representations and promises, as follows:

a. As part of the scheme to defraud, defendant KELLY and Bernard Miller agreed to overcharge and defraud NREL and to share the proceeds of their fraud.

b. As part of the scheme to defraud, defendant KELLY would initiate a request to Bernard Miller for a fraudulent NREL copying job by either telephoning or sending a request via facsimile transmission to Miller Copying Service.

c. As part of the scheme to defraud, Bernard Miller would then prepare a "Miller Copying Service" invoice for the fraudulent NREL copying job in the amount defendant KELLY directed.

d. As part of the scheme to defraud, defendant KELLY would supply Bernard Miller with a government purchase card number, which was either the card number assigned to defendant KELLY or a card number assigned to another NREL employee, to which Bernard Miller was to charge the fraudulent NREL copying job.

e. As part of the scheme to defraud, Bernard Miller would then charge the cost of the fraudulent copy job to the government purchase card number that defendant KELLY

2

provided to him, which would then cause payment from the United States government to Bernard Miller's bank account.

      f. As part of the scheme to defraud, Bernard Miller would receive the monies from the fraudulent NREL copy jobs into his account at Riggs Bank, and would then withdraw cash from his bank account, meet defendant KELLY, and pay defendant KELLY her share.

      g. As part of the scheme to defraud, defendant KELLY would complete the necessary paperwork to facilitate reimbursement for the fraudulent copying jobs on the government purchase card by: (i) falsely completing a "Bankcard Ordering Log," indicating that the copying jobs performed by Bernard Miller were required for certain NREL projects; (ii) submitting a copy of the monthly statement for the relevant government purchase card; (iii) submitting copies of the Miller Copying Service invoices for the fraudulent NREL copying transactions as supporting documentation; and (iv) sending these documents via facsimile transmission to NREL's administrative center in Golden, Colorado.

      h. As part of the scheme to defraud, defendant KELLY submitted documentation to NREL for reimbursements relating to fraudulent copying jobs in a total amount of approximately $126,175.

    6. Evidence obtained during the investigation -- including: (a) NREL employees' statements that certain NREL copying jobs by Miller Copying Service were fraudulent non-existent jobs; (b) Miller Copying Service invoices relating to such fraudulent NREL copying jobs; (c) government purchase card ordering logs and monthly statements reflecting the fraudulent NREL copying jobs; and (d) records showing that the United States government paid for such fraudulent NREL copying jobs — provide specific details regarding the dates of the

fraudulent copying jobs; amounts for the jobs (totaling approximately $126,175); copying job descriptions; and whose government purchase card was used to pay for the fraudulent NREL copying job.

7. [Count 5] In particular, to execute the scheme to defraud or to obtain money from the United States government, as described in ¶¶ 5(a)-(h), above, on September 18, 2001, defendant KELLY sent a reimbursement submission, including a Bankcard Ordering Log (for a card issued to a co-worker) and Miller Copying Service invoices totaling $3,998 via facsimile transmission from NREL in Washington, D.C. to NREL's administrative center in Golden, Colorado.

8. [Count 10] In particular, to execute the scheme to defraud or to obtain money, as described in ¶¶ 5(a)-(h), above, on March 31, 2002, defendant KELLY sent a reimbursement submission, including a Bankcard Ordering Log (for a card issued to a co-worker) and a Miller Copying Service Invoice for $2,436 via facsimile transmission from ~~NREL in Washington, D.C.~~ to NREL's administrative center in Golden, Colorado.

*Ms Kelly's home in Maryland* JU MP

//

//

//

//

//

//

//

//

//

4

9. For the purposes of computing her sentence under the Federal Sentencing Guidelines, defendant KELLY agrees that the total amount of shared proceeds from the scheme was between $120,000 and $200,000.

Dated: _____

For the Defendant:

_____
NICKELLI LYNETTE KELLY

Dated: _____

_____
JANINE YUNKER, ESQUIRE
ATTORNEY FOR NICKELLI LYNETTE KELLY

5